40 A.3d 674

EXXON MOBIL CORPORATION

v.

Paul D. FORD, et al.

No. 1804, Sept. Term, 2009.

Court of Special Appeals of Maryland.

March 6, 2012.

 

EYLER, JAMES R., EYLER, DEBORAH S., MEREDITH, WOODWARD, ZARNOCH, WRIGHT, GRAEFF, HOTTEN, and WATTS, JJ.

## ON MOTION FOR RECONSIDERATION

PER CURIAM.

Appellees are residents of Jacksonville in Baltimore County who were awarded substantial damages as a result of a gasoline leak from an underground storage tank. An appeal of that decision by appellant ExxonMobil Corporation was heard in banc by nine members of this Court.[1] On February 9, 2012, the in banc Court affirmed in part and reversed in part the judgment of the Circuit Court for Baltimore County, reducing the damage award by more than half. In five separate opinions, the in banc Court divided on most issues by a 5–4 vote, although six judges voted to uphold most of the property damage award. On two issues, the Court was unanimous.

■ Appellees have moved to reconsider our February 9th decision asserting that it violates Md.Code (1973, 2006 Repl. Vol.), Court and Judicial Proceedings Article (CJP), § 1–403(c), which provides:

A hearing or rehearing before the court in banc may be ordered in any case by a majority of the incumbent judges of the court. Six judges of the court constitute a quorum of the court in banc. The concurrence of *a majority* of the incumbent judges *of the entire court* is necessary for decision of a case heard or reheard by the court in banc.

(Emphasis added). Essentially, they argue that under § 1–403(c), seven votes of this Court's thirteen authorized incumbent judges were needed to reverse the circuit court and, in their absence, the decision below must be affirmed. Appellees contend that their position is supported by the plain language of § 1–403(c), especially the "entire court" provision. They also claim support in a portion of its history, particularly an amendment to Chapter 11 of the *Laws of 1966* deleting

---

1. Upon receipt of a Judicial Ethics Commission opinion on stock ownership questions, three members of this Court chose to disqualify themselves under Rule 2.11. of the Maryland Code of Judicial Conduct. Another seat on the Court was vacant when this case was argued.

language stating that a concurrence of "those sitting" shall be sufficient for the decision in any case.[2] For reasons set forth below, we unanimously reject appellees' reading of § 1–403(c) as overly technical, inconsistent with sound rules of statutory construction and contrary to well-reasoned authorities, including the Court of Appeals decision in *Department of Human Resources v. Howard*, 397 Md. 353, 918 A.2d 441 (2007).

In *Kaczorowski v. Baltimore*, 309 Md. 505, 514, 525 A.2d 628 (1987), the Court of Appeals said that "the plain-meaning rule does not force us to read legislative provisions in rote fashion and in isolation." Results of statutory interpretation that are unreasonable, illogical or inconsistent with common sense should be avoided. *Id.* at 516, 525 A.2d 628.[3] In addition, when "a statute is phrased in broad general terms, it suggests that the legislature intended the provision to be capable of encompassing circumstances and situations which did not exist at the time of its enactment." *Kindley v. Governor*, 289 Md. 620, 625, 426 A.2d 908 (1981). And the General Assembly is presumed to have intended that all enactments operate together as a "consistent and harmonious body of law." *Farmers & Merchants National Bank of Hagerstown v. Schlossberg*, 306 Md. 48, 61, 507 A.2d 172 (1988).

Appellees would ignore these principles to read § 1–403(c) in isolation from constitutional provisions governing judicial vacancies, notably Article IV, § 5A, and rules governing judicial disqualification, particularly Rule 2.11. of the Maryland Code of Judicial Conduct. These provisions necessarily determine what constitutes "a majority of the incumbent judges of the entire court." Out-of-state authorities crystalize the issue.

---

2. This change occurred before the in banc statute was enacted in 1970 and thus, adds little to our analysis.

3. To the extent judicial consideration of the consequences of a literal interpretation requires a finding of ambiguity, such uncertainty would be present in § 1 -403(c), which requires a quorum of only six judges. This quorum requirement would seem to conflict with appellees' reading of the statute as demanding a seven-vote majority in every in banc proceeding.

In *Board of Commissioners v. Wachovia Loan & Trust Co.,* 143 N.C. 110, 55 S.E. 442 (1906), the North Carolina Supreme Court considered a requirement that a town board create a public debt only after a three-fourths vote of "the entire board" in light of the fact that one board member had resigned. The court refused to adopt a rigid view of the words "entire board," concluding that it meant "all the members of the board in existence, and not all those originally elected." *Id.* at 444. Similarly, in *City of Nevada v. Slemmons,* 244 Iowa 1068, 59 N.W.2d 793 (1953), a city council's filling of a vacancy was challenged because a resignation of one of the members caused it to violate a statutory requirement that the vacancy be filled by a majority vote of "the whole number of members." Iowa's highest court rejected the challenge, noting that the quoted language was "intended to relate to the whole *remaining* members of the council." *Id.* at 795. *See also State ex. rel. Wilson v. Willis,* 47 Mont. 548, 133 P. 962, 964 (1913) ("No case ... suggests that the phrase 'a majority of the members' could mean more than a majority of those constituting the actual membership of the body at the time; so that, if the full membership is sixteen, but at a given time has been reduced by the resignation of one, there are but fifteen members.")

The leading case of *City of Alamo Heights v. Gerety,* 264 S.W.2d 778 (Tex.App.1954), extended this principle of vote determination beyond the setting of traditional vacancies to the absence of a city council member caused by disqualification. At issue there was whether a rezoning had obtained the vote of three-fourths of "all" the members of the legislative body, when one member of the council "disqualified himself by reason of interest." *Id.* at 778–79. The Texas court concluded that a disqualification had to be treated "as though it were a vacancy" and thus "all" members of the legislative body meant "all the members in esse and qualified to act." *Id.* at 779–80. *See also Mobile Community Council for Progress, Inc. v. Brock,* 211 Ariz. 196, 119 P.3d 463, 467 (2005) (Disqualification of one of the board members reduced the total mem-

bership of the board to the number of remaining members who were entitled to vote)[4]; and *Annot.: Abstention from Voting of Member of Municipal Council Present at Session as Affecting Requisite Voting Majority,* 63 A.L.R.3d 1072 at § 9 (1975).

    In sum, these authorities treat vacancies and disqualification the same[5]—as reducing the number of members required to take official action to those "entitled" or "qualified" to vote, regardless of statutory language requiring the votes of "all," "the whole number of" or "the entire" body.[6] In our view, this is the proper interpretation of CJP § 1–403(c).[7]

---

**4.** The Arizona court also noted:

   Mobile's interpretation of the statute would essentially require a unanimous vote by the remaining members of the Board to pass an amendment if one of the Board members was disqualified due to a conflict of interest. Such a requirement could discourage Board members from disqualifying themselves in light of a possible conflict of interest. Sound public policy supports and requires the disqualification of public officials when their private interests create a possibility of conflict with their public duties.

   (Quotations and citations omitted). 119 P.3d at 467.

**5.** We do not mean to suggest that disqualification creates an actual or temporary vacancy. Rather, disqualification is tantamount to a vacancy for the limited purpose of determining voting requirements.

**6.** Of tangential support is *Aetna Securities Co. v. Sickels,* 120 Ind.App. 300, 90 N.E.2d 136 (1950), which involved an Indiana statute governing the transfer of a case to the State's highest court when the "entire" intermediate appellate court failed to obtain four votes concurring in the result. There, one judge disqualified himself, three judges concurred in the judgment and two dissented. Thus, the appellant argued that because "the entire court" of all six judges did not participate, transfer was required. The Court of Appeals of Indiana disagreed. Construing the "entire court" statute with another law providing that if any judge is disqualified to sit, the concurrence of three judges is sufficient to decide the case, the Court of Appeals said the matter could be decided by only three judges. *Id.* at 312–13, 90 N.E.2d 136.

**7.** We need not address the impact of disqualifications on compliance with statutory quorum requirements. Cf. *Comer v. Murphy Oil USA,* 607 F.3d 1049 (5th Cir.2010). All incumbent members of the Court joined in the decision to order in banc review, including the 9 judges who eventually heard argument and decided the case. Clearly, the six-member quorum requirement was satisfied.

The unreasonableness of appellees' contention is highlighted by the U.S. Supreme Court's 2005 change to Rule 35 of the Federal Rules of Appellate Procedure (FRAP). The Court amended the Rule so that a disqualified judge was not included in determining the number of judges required to order a case to be heard en banc in a circuit of the U.S. Court of Appeals. The amendment resolved a conflict among the circuits: seven circuits followed the "absolute majority" approach, where disqualified judges were counted in the base in calculating whether a majority voted to hear a case en banc; and six circuits followed the "case majority" approach, where disqualified judges were not counted. *See Advisory Committee Notes on the 2005 Amendment to FRAP 35.* The Advisory Committee on Appellate Practice Notes explain why the minority rule was preferable:

> First, under the absolute majority approach, a disqualified judge is, as a practical matter, counted as voting against hearing a case en banc. This defeats the purpose of recusal. To the extent possible, the disqualification of a judge should not result in the equivalent of a vote for or against hearing a case en banc.

> Second, the absolute majority approach can leave the en banc court helpless to overturn a panel decision with which almost all of the circuit's active judges disagree. For example, in a case in which 5 of a circuit's 12 active judges are disqualified, the case cannot be heard en banc even if 6 of the 7 non-disqualified judges strongly disagree with the panel opinion. This permits one active judge—perhaps sitting on a panel with a visiting judge—effectively to control circuit precedent, even over the objection of all of his or her colleagues.

Although we recognize the federal en banc scheme differs from in banc review authorized by State law for this Court, these practical drawbacks of appellees' proffered interpretation of § 1–403(c) are nevertheless real. In short, if their view were adopted, it could render useless to court and litigant the in banc review mechanism.[8]

---

8. Another reason § 1–403(c) should not be given the static reading that appellees urge upon us is the fact that when the in banc statute was

The fatal blow to appellees' argument that seven votes were required to reverse the circuit court in the case is found in language in the *Howard* case. There, in concluding that § 1–403(c) did not permit retired judges to serve on in banc panels, Judge Harrell noted in *dicta* the impact of the 1973 Code Revision of § 1–403(c):

> Before the revision, if seven judges of the 13 member court were absent, the court could not have acted in banc for lack of a majority unless judges were specially assigned to fill temporarily the vacant seats[;] the post-revision interpretation allows a four-member majority of the 6 filled seats to decide a case in banc.

397 Md. at 365, n. 16, 918 A.2d 441. In short, seven votes were not required for this Court to reach the decision it did in the February 9, 2012 Per Curiam. A majority of the nine judges qualified to act in this case decided each of the issues on appeal.

**MOTION FOR RECONSIDERATION DENIED.**

KRAUSER, C.J., MATRICCIANI, J., and KEHOE, J. did not participate in the decision on this motion.

---

enacted in 1970, the Maryland Rules provided few grounds for disqualification of a Maryland judge. *See* Md. Rule 18 (in Md.Code (1957, 1971 Repl.Vol.)). Now, the grounds for disqualification are many and all-encompassing. *See* Rule 2.11. of the Maryland Code of Judicial Conduct. There is no reason to believe that the General Assembly in enacting § 1-403(c) would not have intended it to be construed consistently with the evolving Maryland Rule on judicial disqualification—which also has the force of law.