954 A.2d 457

**WILDWOOD MEDICAL CENTER, L.L.C.**

v.

**MONTGOMERY COUNTY, Maryland.**

**No. 125, Sept. Term, 2007.**

Court of Appeals of Maryland.

Aug. 22, 2008.

490

John R. Llewellyn of Germantown, James J. Demma (Miles & Stockbridge P.C. of Rockville), on brief for petitioner.

Scott R. Foncannon, Associate County Attorney, (Leon Rodriguez, County Attorney, Marc P. Hansen, Deputy County Attorney, and Karen L. Federman Henry, Chief, Division of Finance and Procurement, of Rockville), on brief for respondent.

BELL, C.J., HARRELL, BATTAGLIA, GREENE, JOHN C. ELDRIDGE, (Retired, specially assigned), IRMA S. RAKER, (Retired, specially assigned) and DALE R. CATHELL, (Retired, specially assigned), JJ.

PER CURIAM.

Wildwood Medical Center, L.L.C., Appellee in the Court of Special Appeals and Petitioner here, requested on April 28, 2004, a refund of certain real property recordation and transfer taxes it had paid upon presentation of a deed for recordation, under protest, to Montgomery County, Maryland, Appellant below and Respondent here. That request, after a hearing, ultimately was denied by the County. Petitioner took an appeal to the Maryland Tax Court. The Maryland Tax Court (a State administrative agency) granted Wildwood's request for the refund on June 3, 2005. From that final administrative agency action, the County filed a Petition for Judicial Review with the Circuit Court for Montgomery County. The Circuit Court affirmed the decision of the Tax Court. Montgomery County then filed a Notice of Appeal to the Court of Special Appeals.[1]

---

**1.** The questions presented in the County's brief in the Court of Special Appeals were:

I. When property is titled in the names of individuals, rather than in the name of the partnership, does a transfer of that property to a limited liability company qualify for an exemption from transfer and recordation taxes?

II. Did the tax court and the circuit court fail to adhere to the longstanding judicial tenet that tax-exemption statutes are to be strictly construed in favor of the taxing authority, which resulted in an erroneous expansion of an exemption that conflicts with the prohibition against judicial legislation?

The questions as reframed in Wildwood's responsive brief in the Court of Special Appeals were:

I. Was the Maryland Tax Court correct in allowing appellee exemptions from transfer and recordation taxes upon the recordation of the subject deed, in accordance with §§ 12–108(y) and 13–405(c) of the Tax–Property Article, as appellee was a Maryland general partnership?

II. Was title to the property, that is described in what is referred to in these proceedings as the subject deed, vested in the general

On March 8, 2007, the intermediate appellate court filed a reported opinion vacating the judgment of the Circuit Court and remanding the case for further proceedings. Before the mandate of the Court of Special Appeals was issued, however, the County Attorney's Office sent a letter suggesting that the court "consider revising its decision before the mandate issues" and made several suggestions for changes it urged were necessary or appropriate.

The opinion was recalled before the mandate issued. Ultimately, another purported opinion (on reconsideration) was filed on October 31, 2007. A mandate for this new opinion issued on the same date. Thereafter, Wildwood filed with us a Petition for Writ of Certiorari, which we granted on February 13, 2008. *Wildwood Medical v. Montgomery County,* 403 Md. 304, 941 A.2d 1104 (2008). The sole question for which we issued a writ of certiorari based on Wildwood's petition was:

Whether the Maryland Tax Court and the Circuit Court for Montgomery County, Maryland ... were both correct in allowing appellant exemptions from transfer and recordation taxes upon the recordation of the subject deed, in accordance with §§ 12–108(y) and 13–405(c) of the Tax–Property Article, as appellant's predecessor entity held the title to the subject property as a general partnership.

Because the material facts do not appear to be disputed, we shall incorporate a recitation of them into our analysis of the question presented, as necessary. We shall reach and answer in the affirmative this question, but only after some explanation of the serendipitous reasons the matter properly is before us on the merits.

## I.

The panel assigned to hear and decide the County's appeal in the Court of Special Appeals consisted of Judges Theodore G. Bloom, Mary Ellen Barbera, and James A. Kenney, III.

---

partnership at the time of transfer so that the appellee should be granted exemptions from transfer and recordation taxes?

Following oral argument, the panel filed a purported reported opinion, with a dissent, on March 8, 2007. Judge Bloom, writing for himself and Judge Barbera, would have vacated the judgment of the Circuit Court and remanded the case for entry of a judgment reversing the decision of the Tax Court. Judge Kenney, in dissent, would have affirmed the Circuit Court's judgment.

As noted previously, before the mandate issued, counsel for Montgomery County wrote to the panel pointing out reasons why the erstwhile majority opinion required, in counsel's view, certain corrections or revisions. In effect, limited reconsideration was sought by the nominal victor in the intermediate appellate court proceeding. The court apparently agreed because the reported opinion was recalled before a mandate issued.

Before a revised majority opinion in the Court of Special Appeals could be filed, Judge Bloom passed away; however, before he died, we are informed that he approved changes in a "new" draft majority opinion. We know this because the title page of the reported opinion (on reconsideration), filed on October 31, 2007 (after Judge Bloom's passing), said so. 176 Md.App. 731, 934 A.2d 484 (2007).[2] Judge Kenney's dissent also was filed concurrently. The mandate issued on the same day the opinions were filed.

The parties did not question before this Court or the Court of Special Appeals the effect of Judge Bloom's death before a final opinion was filed below and a mandate issued. Because this factor, however, bears on the jurisdictional basis upon which we accepted the case, the parties' omission in this regard is no impediment to our consideration of the discovered "problem."

---

**2.** The relevant language on the title page of the October 31, 2007 opinion was:

> Bloom, J., participated in the hearing and conference of this case, participated also in the decision and adoption of this opinion, which he authored, and approved the requested changes, but died prior to the date on which the revised opinion was filed.

Section 1–403 of the Courts & Judicial Proceedings Article of the Maryland Code (1973, 2006 Repl.Vol.) provides as to the Court of Special Appeals:

Title 1.

Court Structure and Organization

\* \* \*

*Subtitle 4. Court of Special Appeals*

\* \* \*

§ 1–403. Sessions; panels; hearings in banc.

\* \* \*

(b) *Panels.*—A case before the Court of Special Appeals shall be heard by a panel of *not less than three judges* . . . . The concurrence of a majority *of a panel* is necessary for the decision of a case." [Emphasis added.]

Thus, there was no longer a panel of three judges to hear and decide this appeal on October 31, 2007, when the opinions were filed finally in the Court of Special Appeals.

 Generally, when a judge vacates office before submitting a decision in an assigned case, no other person is authorized to submit the decision on the judge's behalf. *State v. Dowdell,* 55 Md.App. 512, 515–516, 464 A.2d 1089, 1091 (1983); see also *Dept. of Human Res. v. Howard,* 397 Md. 353, 367, 918 A.2d 441, 450 (2007) (noting that a judge generally is considered to have vacated office upon death). While the appeal in this case could have been reargued before a reconstituted or new panel in the Court of Special Appeals, there was no authority of which we are aware for Judge Bloom's presumed revised draft opinion to have been filed by someone else on his behalf. Thus, the October 31, 2007 opinions and mandate were nullities, and the appeal technically remained pending at the time we issued our writ of certiorari to the intermediate appellate court.

When this Court granted Wildwood's Petition for Writ of Certiorari and issued a writ in this case on February 13, 2008, it did so, in effect, prior to entry of a proper judgment by the Court of Special Appeals (Maryland Code (1974, 2006 Repl. Vol.), Courts & Judicial Proceedings Article, § 12–201 (stating that "petition can be filed and granted before or after a decision by the Court of Special Appeals")), and while a timely filed appeal remained pending before that court. In such instances, when certiorari is granted bypassing the Court of Special Appeals, this Court considers all the issues that would have been cognizable by the intermediate appellate court. Md. Rule 8–131(b)(2); [3] *Colburn v. Dep't of Pub. Safety & Corr. Servs.*, 403 Md. 115, 119, 939 A.2d 716, 719 (2008); *Converge Serv. Group, LLC v. Curran*, 383 Md. 462, 467, 860 A.2d 871, 874 (2004). That is why it is proper for us to reach and decide the merits of this case.

## II.

On the merits, we shall affirm the judgment of the Circuit Court. In doing so, we hold that the conveyance and recordation of the deed in this case was exempt from the State recording tax and the Montgomery County transfer tax.

A Surveyor's Certificate recorded in Montgomery County in 1990 details the provenance of Plat No. 17744, the subject property. The Certificate identifies Parcel B, the subject parcel, along with several surrounding properties, under the name "Aubinoe and Griffith Limited Partnership." The Certificate characterizes Parcel B as 1) a "resubdivision of part of

---

**3.** Rule 8–131. Scope of review.

\* \* \*

(B) In Court of Appeals—Additional limitations.

\* \* \*

(2) No prior appellate decision. Except as otherwise provided in Rule 8–304(c), when the Court of Appeals issues a writ of certiorari to review a case pending in the court of Special Appeals before a decision has been rendered by that Court, the Court of Appeals will consider those issues that would have been cognizable by the court of Special Appeals.

Wildwood Manor Shopping Center ... being part of lands conveyed by Wildwood Investment Corporation to Alvin L. Aubinoe, now deceased, and Dorothy B. Aubinoe" by deed dated February 27, 1965; and 2) "a subdivision of part of the lands conveyed by Cheshire Land Co., Inc. to Alvin ... and Dorothy" by deed dated September 25, 1962. A deed recorded on February 27, 1969, bearing the signature of Alvin as President of Wildwood Investment Corporation and Dorothy as its Secretary, transfers title to the subject property from Wildwood Investment Corporation to Alvin and Dorothy in equal interest incident to the dissolution of that corporation. The deed states that Alvin and Dorothy previously conveyed the subject property to Wildwood Investment Corporation by deeds dated January 31, 1955 and February 13, 1956.

After Alvin's death, Dorothy transferred title of Parcel B to Dorothy Aubinoe Griffith and Alvin L. Aubinoe, Jr. on May 19, 1983. Later, at Dorothy's death, several individuals and family trusts acquired title to portions of the property through inheritance, as reflected in deeds recorded through the year 2000. In 2000, the co-owners began filing United States Partnership Tax Returns. Not until December 22, 2003, however, did the co-owners execute a formal partnership agreement. In the partnership's operating agreement, the partners listed as their capital contributions their interests "as tenants in common" in the properties. Shortly thereafter, the partnership transferred title to Westwood Medical Center, L.L.C., claiming the transfer qualified for a recording and transfer tax exemption under Maryland Code (2001, 2007 Repl.Vol.), Tax–Property Article, § 12–108(y)(2).[4]

---

**4.** Subsection 12–108(y)(2) of the Tax–Property Article states:

An instrument of writing that transfers title to real property from a predecessor entity ... to a limited liability company is not subject to recordation tax if:

(i) the members of the limited liability company are identical to the partners of the converting general partnership ... ;

(ii) each member's allocation of the profits and losses of the limited liability company is identical to that member's allocation of profits and losses of the converting predecessor entity; and

The State Land Instrument Intake sheet offered at the time of the filing of the deed to Wildwood identified the property as non-residential property held by individuals doing business as Wildwood Medical Center General Partnership. The County rejected the claimed exemption on the ground that the property was never titled in the name of Wildwood Medical Center General Partnership as such. The limited liability company paid the taxes under protest and filed the requisite refund request forms. When the County denied the refund, Wildwood appealed to the Maryland Tax Court. The Tax Court ruled that the transfer qualified for the exemption, and the ruling was affirmed by the Circuit Court for Montgomery County.

■ By the plain and ordinary meaning of § 12–108(y)(2), the statutory exemptions apply to the subject deed. The transferor was a Maryland general partnership. The partnership confirmed its existence by the terms of a written partnership agreement. The intent of the members to carry on as a partnership was manifested by the fact that they filed U.S. Partnership Tax Returns for years previous to executing the formal agreement, specifically 2000 through 2003. The transferee was a limited liability company composed of the same members that comprised the partnership. The same members executed the subject deed, the "instrument of writing" that transferred title to the real property.

Section 9A–101(i) of the Corporations and Associations Article of the Maryland Code defines a partnership as an association of "two or more persons" who "carry on as coowners" in a mutually beneficial business relationship. Such an association creates a partnership "whether or not [it] is called partnership, joint venture, or any other name." Maryland Code (1975, 2007 Repl.Vol.), Corporations & Associations Article,

---

(iii) the instrument of writing that transfers title to real property represents the dissolution of the predecessor entity for purposes of conversion to a limited liability company.
A predecessor entity includes a Maryland general partnership. Maryland Code (2001, 2007 Repl.Vol.), Tax–Property Article, § 12–108(y)(1).

§ 9A–202(a); *Madison Nat'l Bank v. Newrath,* 261 Md. 321, 328, 275 A.2d 495, 499 (1971) (holding individuals who carry on a business to mutual benefit and share in its profits to be partners, "whether they call themselves such or not") (quoting *McBriety v. Phillips,* 180 Md. 569, 573–74, 26 A.2d 400, 403 (1942)). *McBriety* held that a "partnership ... may be proved by express agreement or may be gathered from the intention of the parties as implied from their acts." Through this well-established principle, partnerships can be discerned from "surrounding circumstances." *Vlamis v. De Weese,* 216 Md. 384, 389 140 A.2d 665, 668, 670–72 (1958) (holding that regardless of the name on the record title, the land was the subject of a partnership discernable from surrounding circumstances and therefore passed to the partner as partnership property and not by devise to the widow and her heirs).

■■■ It is the intention of the parties, not the record title alone, that determines whether property not held in the name of the partnership is partnership property nonetheless. *Madison Nat. Bank,* 261 Md. at 323, 275 A.2d at 497 (citing *Vlamis v. De Weese,* 216 Md. 384, 140 A.2d 665 (1958)); *Williams v. Dovell,* 202 Md. 351, 356–57, 96 A.2d 484, 487 (1953) (holding that property acquired as partnership property may be conveyed to individuals within the partnership without reference to the partnership). To the extent that Montgomery County places emphasis on the fact that the partnership in this instance was not formalized until 2003, it is of note that the property held to be partnership property in *Dovell* was acquired as joint tenants in 1937 and a formal partnership agreement was not executed until 1946. In the present case, the intent of the co-owners of Parcel B of Wildwood Shopping Center to carry on as partners dates back at least as far as 1990, when they resubdivided the property and it was identified on the Survey Certificate as partnership property. In addition, as early as 1965, Alvin and Dorothy Aubinoe clearly illustrated their intent to carry on as business partners in a commercial land development that included the subject property when they formed the Wildwood Investment Corporation, subdivided the property, and created the subject parcel.

The County's rationale for demanding payment of recordation and transfer taxes on the subject deed as it transfers title from a partnership of co-owning individuals to a limited liability company made up of the same individuals is that, by not transferring formally the title to the partnership, the family-based partnership avoids ever having to pay the tax. But, "where real estate is *acquired as partnership property,* [and] is conveyed to the partners by name without reference to the partnership, every right of ownership and disposition is in the partnership." *Dovell,* 202 Md. at 356–57, 96 A.2d at 487 (emphasis added). No one contends that the Aubinoes did not pay recording and other taxes when they acquired the property and transferred it to the Wildwood Investment Corporation. Surrounding circumstances indicate that the Aubinoes intended and used the property as co-owners of a business venture; therefore, it was partnership property. The fact that the property was not titled in the name of the partnership or transferred to the partnership, a trustee, or a nominee of the partnership does not defeat the exemption in itself. The record title is not dispositive as to whether the requirements for the claimed exemption are satisfied. *Vlamis,* 216 Md. at 384, 388, 393, 396, 140 A.2d at 667, 670–72.

Moreover, it was the partnership interest that the Aubinoe heirs received on Dorothy's death. As this Court held in *Dovell,* the legal title to partnership property may not be conveyed, devised, or inherited as the individual property of any of the partners, either as joint tenant or as tenant in common. *Dovell,* 202 Md. at 357, 96 A.2d at 487; *see also Kay v. Gitomer,* 253 Md. 32, 37, 251 A.2d 853, 856 (1969) (holding that partnership property is " 'not subject to dower, [courtesy], allowances to widows, heirs or next of kin' "). Only the partner's interest in the real estate passes by devise, inheritance, or individual deed, except in the case of a conveyance to a purchaser for value without notice. *Id.* at 357, 96 A.2d at 487; *see also Dean v. Pinder,* 312 Md. 154, 163–64, 538 A.2d 1184, 1189 (1988) (discussing the effect of issuing stock on conveyance for benefit or value). With that exception, the

legal title of individual partners is an "empty technicality." *Dovell*, 202 Md. at 357, 96 A.2d at 487. Thus, the partner's interest in the partnership is all that the partner may assign or bequeath and, upon the partner's death, it is the partnership interest that passes to the administrator as personal property. *Id.* at 356–57, 96 A.2d at 487. The subject parcel became partnership property when Alvin and Dorothy created the Wildwood Investment Corporation, in which they were President and Secretary, respectively, and transferred the subject parcel to the company for further subdivision and development. Dorothy inherited Alvin's partnership interest on his death, and it was this partnership interest that she transferred to Dorothy Aubinoe Griffith and Alvin L. Aubinoe, Jr. in 1983 or passed by devise to subsequent family trusts or individuals. The parcel remained partnership property, as long as the same individuals identified on the title, or their heirs and assigns, carried on the partnership's business activity.

Maryland law does not require a title in the name of the partnership in order to transfer the partnership property in the course of business. Under the Maryland Revised Uniform Partnership Act, "[a] partnership is an entity distinct from its partners." Maryland Code (2007), Corporations & Associations Article, § 9A–201; *Republic Prop. Corp. v. Mission West Prop., L.P.*, 391 Md. 732, 743, 895 A.2d 1006, 1012 (2006). Section 9A–203 expressly provides that "[p]artnership property is property of the partnership and not the partners individually." Section 9A–302(a)(3) of the Article states:

> Partnership property held in the name of one or more persons other than the partnership, without an indication in the instrument transferring the property to them of their capacity as partners or of the existence of a partnership, may be transferred by an instrument of transfer executed by the persons in whose name the property is held.

Under Maryland law, partnership property held in the name of an individual may be transferred to the formal business entity, as was done in this instance.

A deed is an instrument that conveys title to real property. To "convey" is "to transfer or deliver (something, such as a right or property) to another, esp[ecially] by deed or other writing. . . ." *Black's Law Dictionary* 357 (8th ed.2004). Therefore, "convey" and "transfer" are interchangeable terms. A deed of partnership property from the partners on behalf of the partnership to the limited liability company conveys or transfers title from the "predecessor entity" to the limited liability company. No one contends that the limited liability company does not receive legal title to property as a result of such a deed.

To require the converting general partnership first to title the partnership property in the name of the partnership in order to avail itself of the exemptions at issue is to ignore the past treatment of partnership property and the recognition that partnership property need not be held in the name of the partnership. Applied to the present context, conversion is "[t]he act of changing from one form to another. . . ." *Black's* at 356. It is reasonable to view the intent of the General Assembly, as reflected by the statutory language, as simply to permit, under certain specified conditions, a general partnership converting to a limited liability company and to reflect that conversion in the land records without incurring recordation or transfer tax consequences. Such a reading is consistent with § 4A–213(b)(1) of the Corporations and Associations Article, which provides that "*[a]ll* property *owned* by the converting general . . . partnership . . . remains vested in the converted entity." (Emphasis added.) Recording the deed in the land records merely reflects and confirms the statutory vesting of the partnership property in the limited liability company.

That interpretation is not inconsistent with the exemption provided in § 12–108(q) of the Tax–Property Article, that an instrument of writing conveying real property from corporations, limited liability companies and partnerships to the original shareholders, members, or partners of the partnership "on its liquidation, dissolution or termination is not subject to recordation tax. . . ." In order to qualify for the exemption at

issue in this case, the conversion of a general partnership to a limited liability company must represent a "dissolution of the predecessor entity," and the real property of the dissolved partnership must be conveyed to an entity made up of the identical partners with the same rights and obligations as to profits and losses. Exempting conveyances such as the present instance is not unlike exempting the conveyance of property in a dissolved partnership to the original partners under § 12–108(q). In both situations, there is no change in the composite membership of the group acting in partnership, and transferring the property title to the same individuals that make up the legal entity at the time of the entity's dissolution effects no real change in ownership.

Resting a determination of legislative intent in such taxation matters on a distinction between "title" and "ownership" would resurrect an "empty technicality" that has long been put to rest by case law and statutory law. *Madison Nat'l Bank*, 261 Md. at 331, 275 A.2d at 500; *Vlamis*, 216 Md. at 394, 140 A.2d at 671. Instead, it should be presumed that the General Assembly was aware that long-established rules of partnership law hold that: 1) partnerships are separate entities from their individual partners; 2) partnership real property can be held by one or more persons without reference to the partnership in the instrument transferring the property to them; and, 3) those persons, in turn, may transfer that property by an instrument to another person or entity. *See Taylor v. Mandel*, 402 Md. 109, 131, 935 A.2d 671, 684 (2007) (noting the presumption that the Legislature has acted with full knowledge of prior and existing case law, legislation, and policy).

For these reasons, we affirm the judgment of the Circuit Court for Montgomery County holding that the decision of the Maryland Tax Court was correct.

**JUDGMENT OF THE CIRCUIT COURT FOR MONT-GOMERY COUNTY AFFIRMED; COSTS IN THIS**

COURT AND THE COURT OF SPECIAL APPEALS TO BE PAID BY MONTGOMERY COUNTY, MARYLAND.

CATHELL, J., joins judgment only.