969 A.2d 277

**Brandon Justin JACKSON**

**v.**

**STATE of Maryland.**

**Victor Antonio Glascoe**

**v.**

**State of Maryland.**

**Nos. 99, 98, Sept. Term, 2008.**

Court of Appeals of Maryland.

April 8, 2009.

Marc A. DeSimons, Jr., Asst. Public Defender (Nancy S. Forster, Public Defender, Baltimore), on brief, for petitioner.

Gary E. O'Connor, Asst. Atty. Gen. (Douglas F. Gansler, Atty. Gen. of Maryland, Baltimore), on brief, for respondent.

Argued before BELL, C.J. HARRELL, BATTAGLIA, GREENE, ADKINS, BARBERA and IRMA S. RAKER (Retired, Specially Assigned), JJ.

HARRELL, J.

With the filing of this opinion, this Court will have completed a "Goldilocks" trilogy.[1] In *Department of Human Resources v. Howard,* 397 Md. 353, 918 A.2d 441 (2007), in the context of an in banc proceeding in the Court of Special Appeals, we found that more than 13 judges was too much. In *Wildwood Medical Center, L.L.C. v. Montgomery County,* 405 Md. 489, 954 A.2d 457 (2008) (per curiam), in the context of a three-judge panel of that court, where the nominal author of the opinion in the case passed-away before a final opinion could be filed and the remaining judges split over the result, we found the number of judges too few. In the present case, we shall find that two judges in agreement are just right.

The common issue involved in this consolidated appeal of two cases is whether a judgment by the Court of Special Appeals is valid where one of the three judges on the panel that heard argument died before the case was decided, but the remaining two judges, agreeing on the reasoning and result, filed an opinion nonetheless. Following its purported decision in one of the cases involved here, the Court of Special Appeals denied the appellant's Motion to Recall Mandate, holding that a two-judge majority of a panel lawfully may decide an appeal despite the intervening death of the third judge on the panel. *Jackson v. State,* 182 Md.App. 588, 597, 959 A.2d 84, 89 (2008). In doing so, the Court of Special Appeals distinguished this Court's opinion in *Wildwood, supra,* on the basis that *Wildwood* applies "only to cases in which one member of the panel [of the Court of Special Appeals] has passed away and the two remaining panel members disagree as to the decision." *Jackson,* 182 Md.App. at 590, 959 A.2d at 85. For the reasons that

---

1. *Three Bears, in* 2 FUNK & WAGNALLS STANDARD DICTIONARY OF FOLKLORE MYTHOLOGY AND LEGEND 1110 (Maria Leach ed., Funk & Wagnalls Co. 1950).

follow, we affirm the judgments of the intermediate appellate court.

## Relevant Factual and Procedural Background

### Jackson v. State

On 9 January 2006, a jury sitting in the Circuit Court for Kent County convicted Brandon Jackson of distribution of cocaine and related offenses. Jackson noted a timely appeal to the Court of Special Appeals, challenging his convictions and sentences. A three-judge panel of the intermediate appellate court heard oral argument on 9 July 2007. The panel consisted of Judges Joseph F. Murphy, Jr., Raymond G. Thieme, Jr., and Theodore G. Bloom. Judge Murphy, at the time the panel heard oral argument, was Chief Judge of the Court of Special Appeals; however, by the time the opinion was filed in Jackson's appeal, he had been appointed by Governor O'Malley to the Court of Appeals. Thus, as the author of the opinion in Jackson's case in the Court of Special Appeals, he was sitting as a recalled member of that court when the opinion was filed.[2] Judges Thieme and Bloom were retired judges specially assigned to the panel. Regrettably, Judge Bloom died six weeks after argument, while Jackson's appeal remained pending.

On 10 July 2008, in an unreported opinion authored by Judge Murphy, the Court of Special Appeals affirmed Jackson's convictions, but reversed one of his sentences. The cover page of the court's opinion noted:

Bloom, J. participated in the hearing of the case and in the conference in regard to its decision, but died prior to adoption of the opinion.

Jackson filed in the Court of Special Appeals a Motion to Recall Mandate and a Motion for Reconsideration, asserting that the panel's purported decision was invalid because Judge Bloom died before it was issued. The intermediate appellate

---

2. Naturally, Judge Murphy is recused from considering this matter as it comes to us.

court, in a reported opinion in which Judge James P. Salmon replaced Judge Bloom on the panel, denied the motions. *Jackson v. State,* 182 Md.App. 588, 959 A.2d 84 (2008). Jackson filed with this Court a Petition for a Writ of Certiorari, which we granted. *Jackson v. State,* 406 Md. 443, 959 A.2d 792 (2008).[3]

## *Glascoe v. State*

On 5 November 2005, a jury sitting in the Circuit Court for Prince George's County convicted Victor Glascoe of robbery and related handgun charges stemming from his robbing a 7–11 convenience store. Glascoe noted a timely appeal to the Court of Special Appeals. Oral argument in his case was heard on the same day as, and by the same panel that heard oral argument in, Jackson's case.

On 10 July 2008, the same day that the decision in Jackson's case was filed, the panel, in an unreported opinion also authored by Judge Murphy, affirmed Glascoe's convictions. The cover page of the opinion provided:

> Theodore G. Bloom participated in the hearing of the case and in the conference in regard to its decision, but died prior to the adoption of the opinion.

Glascoe filed with this Court a Petition for a Writ of Certiorari, which we granted, limited to the issue of the effect of Judge Bloom's passing on the extant decision of the intermediate appellate court. *Glascoe v. State,* 406 Md. 443, 959 A.2d 792 (2008).[4] We consolidated Glascoe's case with that of Jackson.

---

**3.** The sole question raised in Jackson's petition was:

Did the Court of Special Appeals fail to issue a valid decision where one of the three judges assigned to the panel who heard oral argument in the case died before the opinion was issued?

**4.** Mr. Glascoe's petition also asked us to decide whether the State's peremptory challenges at his trial violated *Batson v. Kentucky,* 476 U.S. 79, 106 S.Ct. 1712, 90 L.Ed.2d 69 (1986), which prohibits the use of peremptory challenges to exclude people from serving on a jury because of their race. We did not grant his Petition as to this issue.

## Discussion

 This case principally concerns an interpretation of Section 1–403(b) of the Courts and Judicial Proceedings Article of the Maryland Code. That section provides:

> A case before the Court of Special Appeals shall be heard by a panel of not less than three judges. The panels shall be constituted, sit at the times, and hear the cases as directed by the Chief Judge from time to time. A quorum of a panel consists of one less than the number of judges designated to sit on the panel. The concurrence of a majority of a panel is necessary for the decision of a case.

Maryland Code (2006 Repl. Vol.), Courts and Judicial Proceedings Article, § 1–403(b).[5]

 The principles that guide us when confronted with a matter of statutory interpretation are familiar. As recently stated:

> In statutory interpretation, our primary goal is always "to discern the legislative purpose, the ends to be accomplished, or the evils to be remedied by a particular provision, be it statutory, constitutional, or part of the Rules." We begin our analysis by first looking to the normal, plain meaning of the language of the statute, reading the statute as a whole to ensure that " 'no word, clause, sentence or phrase is rendered surplusage, superfluous, meaningless or nugatory.' " If the language of the statute is clear and unambiguous, we need not look beyond the statute's provisions and our analysis ends. If, however, the language is subject to more than one interpretation, or when the terms are ambiguous when it is part of a larger statutory scheme, it is ambiguous, and we endeavor to resolve that ambiguity by looking to the statute's legislative history, case law, statutory purpose, as well as the structure of the statute.

*Int'l Ass'n of Fire Fighters, Local 1715 v. Mayor of Cumberland,* 407 Md. 1, 8–9, 962 A.2d 374, 378–79 (2008) (internal

---

5. Unless otherwise specified, all statutory references are to Maryland Code (2006 Repl. Vol.), Courts and Judicial Proceedings Article, § 1–403(b).

citations omitted); *Doe v. Montgomery County Bd. of Elections*, 406 Md. 697, 712, 962 A.2d 342, 350–51 (2008) (internal citations omitted); *Supervisor of Assessments v. Stellar GT*, 406 Md. 658, 669–70, 961 A.2d 1119, 1125–26 (2008) (internal citations omitted).

The flagship contention of Jackson and Glascoe (collectively "Petitioners") is that, by the plain language of Section 1–403(b), "a panel of not less than three judges" must exist at all times from the moment the panel convenes to hear an appeal up to and including the moment in which the panel renders its decision on the appeal, i.e., files its opinion. Petitioners asseverate that, because the panel that decided their cases became a panel of two judges upon the death of Judge Bloom, the decisions by the remaining majority of judges on the panel were nullities. This is not the correct interpretation of the statutory provision at issue.

Facially, Section 1–403(b) does not mandate that "a panel of not less than three judges" must decide an appeal. The language, "a panel of not less than three judges," proscribes who must *hear* an appeal. As for who may decide the appeal, however, Section 1–403(b) is silent, directing only that the "concurrence of the majority of a panel is necessary for the decision." The statutory language does not elucidate whether the death (or vacation of office) of a panel member who heard an appeal causes the initial panel to dissolve, such that the remaining judges, if less than three, may not render a valid decision. Section 1–403(b) is ambiguous in this regard.

Review of the circumstances and legislative history surrounding 1983 amendments to Section 1–403(b), however, provides significant guidance on the matter. Before 1983, the statute provided:

A case before the Court of Special Appeals shall be heard *and decided* by a panel of not less than three judges. The panels shall be constituted, sit at the times, and hear the cases as directed by the Chief Judge from time to time. A quorum of a panel consists of one less than the number of judges designated to sit on a panel, *but never less than three*

*judges.* The concurrence of a majority of a panel is necessary for the decision of a case.

Md. Code (1980 Repl. Vol.), Cts. & Jud. Proc. Art., § 1–403(b) (italics added). On 23 December 1982, however, the Honorable John P. Moore of the Court of Special Appeals died, prompting "emergency" legislation designed to avoid the need to reargue cases that were heard by panels on which he sat and heard argument. On 25 February 1983, Delegate Joseph Owens, Chair of the House Judiciary Committee, sponsored House Bill 1511, which provided as follows:

SECTION 1. BE IT ENACTED BY THE GENERAL ASSEMBLY OF MARYLAND, That the Laws of Maryland read as follows:

Article—*Courts and Judicial Proceedings 1–403.*

(b) A case before the Court of Special Appeals shall be heard [and decided] by a panel of not less than three judges. The panels shall be constituted, sit at the times, and hear the cases as directed by the Chief Judge from time to time. A quorum of a panel consists of one less than the number of judges designated to sit on the panel[, but never less than three judges]. The concurrence of a majority of a panel is necessary for the decision of a case.

SECTION 2. AND BE IT FURTHER ENACTED, That this Act shall apply to all cases in the Court of Special Appeals in which the mandate has not been issued as of the effective date of this Act.

SECTION 3. AND BE IT FURTHER ENACTED, That this Act is hereby declared to be an emergency measure and necessary for the immediate preservation of the public health and safety and having been passed by a yes and nay vote supported by three-fifths of all the members elected to each of the two Houses of the General Assembly, the same shall take effect from the date of its passage.

H.B. 1511 (1983).

Additionally, the Department of Legislative Reference's summary of House Bill 1511, prepared for the Senate Judicial Proceedings Committee, provided the following insight:

*SUMMARY OF BILL*:

This bill amends the existing law by repealing the requirement that a case before the Court of Special Appeals must be decided by the full panel of three judges which heard the case.

The bill leaves intact the provision that a majority of the panel which hears the case must concur in its decision.

The bill is an emergency measure.

*BACKGROUND*:

The law presently provides that cases must be heard and decided by a panel of three judges. In light of the recent death of a member of the Court, numerous cases will have to be reheard to get a decision by 3 judges unless this bill is passed.

*LEGISLATIVE INTENT*:

The intent of the bill is to provide for the decision of cases heard by full panel of the Court of Special Appeals in the event of the removal, death, or disability of a judge on a panel.

Summary of Committee Report for H.B. 1511 (1983).

Governor Harry Hughes signed House Bill 1511 into law on 25 March 1983. Act of March 25, 1983, ch. 6. Commenting on the change to Section 1–403(b), this Court previously observed that it was intended "to remove the requirement that the Court of Special Appeals *decide* cases by a panel of three judges." *Howard*, 397 Md. at 361 n. 13, 918 A.2d at 446 n. 13 (italics in original). The revised Section 1–403(b), we elaborated, "allows the court the flexibility to hear cases in three-judge panels and still render a two judge majority decision in the event that one member of the panel is unable to participate in the decision-making phase of the case." *Id.*

The present cases fall squarely within the circumstances embraced and contemplated by the 1983 amendments to Section 1–403(b). Judge Bloom's passing notwithstanding, the remaining judges sitting on the panel that was convened to hear Petitioners' cases constituted a quorum. Because they

were in agreement as to the reasoning and outcomes of Petitioners' cases, there was a "concurrence of a majority of [the] panel." *See* Md.Code, Cts. & Jud. Proc. Art., § 1–403(b). Accordingly, the decisions rendered in Petitioners' cases by the Court of Special Appeals are valid.

Petitioners, citing this Court's recent decision in *Wildwood, supra,* nonetheless maintain that the decisions in their cases were nullities. The procedural posture of *Wildwood* also arose from the passing of Judge Bloom; however, there, we considered whether the intermediate appellate court issued a valid decision, where the opinion was written purportedly by Judge Bloom, despite being filed after his death. 405 Md. at 494, 954 A.2d at 460. Moreover, the remaining judges on the panel on which Judge Bloom sat disagreed with each other over the outcome of the case before them. *Id.* We held that the opinion and mandate in *Wildwood* were nullities because no one was "authorized to submit the decision on [Judge Bloom]'s behalf." *Wildwood,* 405 Md. at 495, 954 A.2d at 461.

Petitioners attempt to draw succor from language in *Wildwood* in which we emphasized as pertinent to our holding that "there was no longer a panel of three judges to hear and decide th[e] appeal." 405 Md. at 495, 954 A.2d at 461. Petitioners' reliance on that language here, however, is misplaced. While it is true that the fact that there no longer existed a three-judge panel to decide the appeal was a significant consideration in *Wildwood,* the reason for that significance was that the disagreement between the two remaining judges precluded the possibility of a "concurrence of [the] majority of [the] panel." *See* Md.Code, Cts. & Jud. Proc. Art., § 1–403(b). Stated succinctly, the need that existed in *Wildwood,* for a panel of three judges to hear and decide the appeal, does not exist here, where we have a "concurrence of a majority of [the] panel," despite the loss of the third judge on the panel. *See* Md.Code, Cts. & Jud. Proc. Art., § 1–403(b).

Petitioners next argue that public policy favors their interpretation of Section 1–403(b). They urge that an opinion by a panel of appellate judges should reflect the end result of the

collective decision-making process of all of the judges assigned to the panel. They maintain that the appellate process, from the hearing until the time the decision is filed, is designed to bring "multiple judicial viewpoints" into the discussion of how the panel should resolve the appeal before it. Thus, in order to facilitate the purpose of the appellate process, they claim, the panel convened to hear argument in a given case must always exist as a panel of not less than three judges until a decision is reached (or a new panel formed). To that end, Petitioners seek support from this Court's decision in *Howard, supra.* There, we held that the statutory provision enabling the Court of Special Appeals to hear and decide cases in banc did not permit for retired judges, who were specially assigned to the earlier panel that initially heard a case, to participate in proceedings in banc. *Howard,* 397 Md. at 371, 918 A.2d at 453. In doing so, we observed in passing that the two retired, specially assigned judges who participated in the in banc proceeding at issue were split, with one voting with the majority and the other voting with the dissent; however, we commented that we could not presume the same end result would obtain in the case on remand, absent the participation of the specially assigned judges. *Howard,* 397 Md. at 369 n. 18, 918 A.2d at 451 n. 18. "[T]he dynamics of conferencing and deciding a case," we noted, "is sometimes a delicate process influenced by the presence or absence of certain judges." *Id.*

The above quoted language from *Howard* is not helpful to Petitioners here. In *Howard,* the purpose of pointing out the impact of a judge's presence or absence was to clarify why it was necessary for this Court to remand the matter, despite the fact that the two specially assigned judges participating in the in banc proceeding and decision (together with the 13 incumbent members of the court) effectively cancelled-out each other's votes. *Id.* Here, unlike *Howard,* the panel members who rendered decisions in Petitioners' cases acted within the purview of the General Assembly's grant of authority. Thus, we need not consider whether a different result might obtain on remand.

We note that whatever wisdom there may be in Petitioners' assertion—that it is better public policy to require that panels of not less than three judges hear *and* decide appeals, even when two judges on the panel are in concurrence despite the loss of the third judge on the panel—was resolved by the Legislature in the 1983 amendments to Section 1-403(b). We shall not revisit the judgment of the General Assembly.

**JUDGMENTS OF THE COURT OF SPECIAL APPEALS AFFIRMED; COSTS TO BE PAID BY PETITIONERS.**