*Kenneth Mahai v. State of Maryland*, No. 41, September Term, 2020. Opinion by Getty, J.

**CRIMINAL LAW – COURTS AND JUDICIAL PROCEEDINGS – POSTCONVICTION PROCEEDINGS – APPLICATION FOR LEAVE TO APPEAL DENIED –** Court of Appeals held that § 12-202 of the Courts and Judicial Proceedings Article of the Maryland Code is constitutional under Article IV, § 14A of the Maryland Constitution. Court of Appeals held that phrase "intermediate appellate jurisdiction" in Article IV, § 14A does not create a substantive limit on the Court of Special Appeals' jurisdiction.

IN THE COURT OF APPEALS
OF MARYLAND

No. 41

September Term, 2020

---

KENNETH MAHAI

V.

STATE OF MARYLAND

---

Barbera, C.J.,
McDonald
Watts
Hotten
Getty
Booth
Biran

JJ.

---

Opinion by Getty, J.

---

Filed: July 20, 2021

Pursuant to Maryland Uniform Electronic Legal
Materials Act
(§§ 10-1601 et seq. of the State Government Article) this document is authentic.



Suzanne C. Johnson, Clerk

The Court of Special Appeals' denial of an application for leave to appeal is a "winnowing device[] designed to sift precious metal from ordinary silt[,]" similar to this Court's denial of a petition for writ of certiorari. *Conaway v. State,* 464 Md. 505, 524 n.18 (2019). The "objective of both processes is the ascertainment of whether there is something about the questions raised in either context that merits further consideration." *Id.* at 523 n.18. In this case, we address the constitutionality of § 12-202 of the Courts and Judicial Proceedings Article ("CJ") of the Maryland Code, which precludes this Court from reviewing the Court of Special Appeals' denial of an application for leave to appeal in a postconviction proceeding. After considering the plain language and history of the adoption of Article IV, § 14A of the Maryland Constitution ("Article IV, § 14A"), we hold that Mr. Mahai has failed to demonstrate that CJ § 12-202 clearly violates the Maryland Constitution and thus has failed to overcome the presumption of constitutionality that is afforded to CJ § 12-202. We therefore dismiss this appeal due to lack of subject matter jurisdiction pursuant to CJ § 12-202.

## BACKGROUND

### A.    *Stabbing and Police Investigation.*

The murder of Jermaine Morrison occurred in broad daylight on Nome Street at the Holabird Park Apartments in Woodmere, Baltimore City, Maryland. Several witnesses in the vicinity of the murder recounted their observations to investigators from the Baltimore City Police Department about a street fight that resulted in deadly violence.

One witness, Angel Rodriguez, stated that he left for lunch about noon on October 25, 2005, from his job in the maintenance department of the Holabird Park Apartments.

He also lived in the same apartment complex at 1717 Nome Street. On the walk to his apartment, he encountered two individuals that he knew, Mr. Morrison and Kenneth Mahai. Mr. Rodriguez could see and hear Mr. Morrison and Mr. Mahai arguing about "being on the same street."

A second witness, Stephen Smith, was walking from his residence at 1719 Nome Street to a nearby gas station. Mr. Smith observed Mr. Mahai and Mr. Morrison engaged in a fistfight. A third person, unknown to Mr. Smith, broke up the fight, and Mr. Smith watched Mr. Morrison leave on foot.

Phyllis Becote, who lived near Nome Street, was a third witness. About the same time that the first two witnesses saw the street fight, she was alerted by her son that a man had just fallen down on the street. Ms. Becote went outside and saw Mr. Morrison laying on the ground. She instructed her son to call for emergency assistance and then attempted to determine what was wrong with Mr. Morrison. Moving his shirt aside, she saw "a lot of blood." In response, Ms. Becote covered the bleeding wound and waited for an ambulance to arrive.

A fourth—and key—witness, Sharon Mosely, was also a resident of Nome Street. While Ms. Mosely was visiting a friend who lived in the same apartment building as she did, Mr. Mahai entered the apartment and told Ms. Mosely and her friend that he had "just got in a[n] altercation with this guy and he stabbed the guy three times." Mr. Mahai then cleaned a knife off, threw the knife into the trash, took the trash out, and dumped it by a nearby shop.

2

Meanwhile, Mr. Morrison was transported to Johns Hopkins Bayview Hospital by ambulance where he was pronounced dead. A postmortem examination was conducted by the Office of the Chief Medical Examiner of Maryland. The medical examiner concluded that Mr. Morrison died of stab wounds to his chest, abdomen, and arm.

While investigating Mr. Morrison's death, the police conducted witness interviews of Ms. Becote, Mr. Rodriguez, Mr. Smith, and Ms. Mosely. Ms. Becote was interviewed in a neighborhood canvas. Mr. Rodriquez was later interviewed and told the police that Mr. Mahai and Mr. Morrison were "neighborhood drug dealers" who had an altercation "over territory." In his police interview, Mr. Smith stated that he observed Mr. Mahai hit Mr. Morrison twice in the "chest area" and additionally identified Mr. Mahai in a photo array. Finally, Ms. Mosely provided the police with a taped statement recounting her observations of Mr. Mahai's actions and statements on October 25. Ms. Mosely also identified Mr. Mahai in a photo array and wrote on the array form a short description of the same facts that she provided in the taped statement.

**B.      *First Indictment.***

Less than a month after Mr. Morrison's death, Mr. Mahai was arrested on November 20 and charged with the murder of Mr. Morrison. The following month, a grand jury indicted Mr. Mahai on December 19 in the Circuit Court for Baltimore City on charges of first-degree murder, carrying a weapon openly with intent to injure, and carrying a concealed dangerous weapon.

An initial trial date was set for April 24, 2006. However, the trial was repeatedly postponed. Mr. Mahai requested the first postponement due to a change in his counsel.

3

The second postponement occurred at the request of Mr. Mahai's counsel because of additional discovery that had been provided by the State. The State then requested the third, fourth, and fifth postponements because of the State's continued difficulty in locating their key witness, Ms. Mosley. At the time of the fourth postponement, Mr. Mahai began asserting his Sixth Amendment right to a speedy trial and that the delay in "bringing [him] to trial was now of constitutional proportion[.]"

On December 6, the State requested yet another postponement because of the ongoing problems in locating witnesses. The circuit court granted the State an additional twenty-four hours to produce its witnesses. However, the next day the State was still unable to produce its witnesses and again requested a postponement. The circuit court denied this request, and the State, pursuant to Maryland Rule 4-247(a), entered a *nolle prosequi* on the record thereby terminating the prosecution and dismissing the charges against Mr. Mahai.

## C.   *Second Indictment, Trial, and Sentencing.*

On February 7, 2007, the court issued another warrant for Mr. Mahai's arrest for the same charges of the murder of Mr. Morrison. On April 13, Mr. Mahai was arrested. Six days later, a grand jury indicted Mr. Mahai in the Circuit Court for Baltimore City on the same first-degree murder and weapons charges as the first indictment.

Mr. Mahai filed a motion to dismiss on May 17. In the motion, Mr. Mahai raised the identical arguments from his prior trial that his Sixth Amendment constitutional right to a speedy trial had been violated as a result of the eighteen-month delay from the time of his first arrest until the time of this motion. The circuit court judge denied Mr. Mahai's

4

motion from the bench. The circuit court judge reasoned that the period of time and causes for the delay were not sufficient to warrant dismissing the case, and the judge had "heard nothing that would deny [Mr. Mahai] a right to a fair trial."

A three-day jury trial was held in the Circuit Court for Baltimore City on August 8, 9, and 10. The jury found Mr. Mahai guilty of first-degree murder, carrying a weapon openly with intent to injure, and carrying a concealed dangerous weapon. On September 28, the circuit court judge sentenced Mr. Mahai to life in prison for first-degree murder and a consecutive three-year term for carrying a weapon openly with intent to injure. The remaining weapon conviction, carrying a concealed dangerous weapon, was merged for sentencing purposes. Mr. Mahai timely noted an appeal.

### D.      *Appeal and Opinion of the Court of Special Appeals.*

On September 8, 2009, in an unreported opinion, the Court of Special Appeals affirmed Mr. Mahai's murder conviction but reversed his weapon convictions. *Mahai v. State*, No. 1748, Sept. Term, 2007 (filed Sept. 8, 2009). The court first applied the balancing test announced in *Barker v. Wingo*, 407 U.S. 514 (1972), that weighs both the conduct of the prosecution and the defendant, and the court held that Mr. Mahai's right to a speedy trial was not violated.

Next, the intermediate appellate court turned to Mr. Mahai's argument that various jury instructions were erroneous and misleading. Mr. Mahai conceded that his defense counsel at trial ("trial counsel") had not objected to these instructions at trial. However, he argued that on appeal the court should review the instructions for plain error. The court individually analyzed each jury instruction at issue.

5

On the issue of the opening and closing jury instructions pertaining to reasonable doubt, the court held that plain error review of these instructions was not warranted. On the issue of the opening and final instructions on the state's failure to use investigative techniques, the court held there was no plain error. Notably, on the issue of the jury instruction pertaining to whether a penknife is a dangerous weapon, the court held that the circuit court committed plain error by failing to include a necessary element of the offense of carrying a dangerous weapon. Consequently, on the basis of this plain error, the intermediate appellate court reversed Mr. Mahai's convictions for carrying a dangerous weapon openly with intent to injure and carrying a concealed dangerous weapon. These two charges were remanded for a new trial.[1]

Finally, Mr. Mahai contended that his trial counsel's failure to object to the sufficiency of the evidence relating to his alleged use of a penknife deprived him of effective assistance of counsel. In analyzing this argument, the court noted that a postconviction proceeding was the appropriate way for Mr. Mahai to raise a claim of ineffective assistance of counsel, and absent any showing on the record otherwise, the court must adhere to the presumption that trial counsel's conduct was reasonable professional conduct. Concluding that Mr. Mahai failed to rebut this presumption, the court did not address Mr. Mahai's claim of ineffective assistance of counsel.

Mr. Mahai filed a *pro se* petition for writ of certiorari to this Court, which was denied on December 18, 2009. *Mahai v. State*, 411 Md. 741 (2009).

---

[1] On October 26, 2009, following the Court of Special Appeals' decision, the State dismissed both weapons charges by entering a *nolle prosequi*.

### E.    *Postconviction Petition and Hearing.*

On September 6, 2017, nearly ten years after Mr. Mahai was sentenced for his first-degree murder conviction, he filed a *pro se* petition for postconviction relief, which was later supplemented by postconviction counsel.  The supplemented petition sought a new trial, permission to file a belated motion for modification of his sentence, and permission to file a belated application for review of his sentence by a three-judge panel.  The petition alleged ineffective assistance of trial counsel and appellate counsel on the basis of nine individual claims.

The Circuit Court for Baltimore City held a hearing on Mr. Mahai's postconviction petition over two days, September 9 and 10, 2019.  At the hearing, Mr. Mahai's postconviction counsel argued that his trial counsel failed to object to a defective *voir dire* process that permitted jurors to self-assess their ability to be fair, and his appellate counsel failed to present a claim of plain error in connection with the *voir dire* process on direct appeal.  Mr. Mahai further contended that his trial counsel's failure to object to the improper *voir dire* deprived him of his right to an impartial jury resulting in an unfair trial from which prejudice could be presumed.

Mr. Mahai's postconviction counsel argued that the trial judge inappropriately assisted the prosecution by asking various questions of witnesses to "fill in the gaps" of the prosecution's case.  Noting that Mr. Mahai's trial counsel did not object to these questions, Mr. Mahai's postconviction counsel asserted that both the trial court's error and the ineffective assistance of trial counsel prejudiced Mr. Mahai.

7

Additionally, similar to an argument raised on direct appeal, Mr. Mahai's postconviction counsel pointed to inconsistent jury instructions pertaining to reasonable doubt—one given at the beginning of trial and one given prior to jury deliberations. Mr. Mahai's postconviction counsel argued that trial counsel provided ineffective assistance of counsel by failing to object to these instructions or to request a curative instruction.

Mr. Mahai's postconviction counsel also argued that his trial counsel was ineffective for failing to file a motion for modification of his sentence and a motion for a three-judge panel to review his sentence—both of which he requested in a written letter to his trial counsel on the day following his conviction. His postconviction counsel argued, in the aggregate, the prejudice resulting from these issues entitled Mr. Mahai to a new trial.

In response, the State argued that Mr. Mahai waived his *voir dire* arguments when he failed to raise them on direct appeal. On the issue of the trial judge's role in jury communication and witness questioning, the State noted that the Court of Special Appeals had already held that there was no excessive interference on the part of the trial judge. Additionally, the State argued there was no prejudice resulting from the trial judge's conduct and that lack of objection by trial counsel was a deliberate and strategic tactic at trial instead of ineffective assistance.

The State further argued that the trial judge's jury instructions were proper, and, in any event, no prejudice resulted from the reasonable doubt jury instructions given. Lastly, the State did not object to the postconviction court allowing Mr. Mahai to file a belated motion for sentence modification or a belated application for a three-judge panel to review his sentence.

On February 27, 2020, the postconviction court entered a written opinion and order denying Mr. Mahai's petition for relief. The opinion thoroughly addressed each issue raised in the petition and argued at the hearing. Regarding trial counsel's failure to object to the formulation of the *voir dire* questions, the court held that "nothing [was] improper about the questions posed to the jury" and therefore Mr. Mahai's claim of ineffective assistance of counsel on this ground was meritless. Regarding trial counsel's failure to object to what Mr. Mahai construed as inconsistent jury instructions pertaining to reasonable doubt, the court drew a distinction between "a trial judge giving preliminary instructions and jury instructions after the presentation of evidence prior to deliberation[.]" The court reasoned that the trial judge intended to give an "overview of what was to come from the trial" by giving preliminary remarks on reasonable doubt, and did not intend these preliminary remarks to be taken as jury instructions. Thus, the lack of objection or request for a curative instruction by trial counsel did not support a claim of ineffective assistance of counsel. Finally, regarding trial counsel's failure to file post-trial motions for sentence review and modification, the court ruled that Mr. Mahai had not provided sufficient evidence that he timely asked trial counsel to file these motions.

Ultimately, the court concluded that all of the issues raised, taken in the aggregate, did not result in any prejudice to Mr. Mahai, and the court accordingly held that Mr. Mahai's Sixth Amendment right to a speedy and fair trial had not been violated.

*F.*    *Application for Leave to Appeal Postconviction Denial.*

On March 17, 2020, Mr. Mahai filed an application for leave to appeal in the Court of Special Appeals. In an order issued on August 14, 2020, the Court of Special Appeals denied Mr. Mahai's application for leave to appeal without explanation.

Subsequently, Mr. Mahai timely petitioned this Court for writ of certiorari, which we granted on November 10, 2020. *Mahai v. State*, 471 Md. 263 (2020). Before us are the following questions:

> 1. Does Article IV, § 14A of the Maryland Constitution, which authorizes the Court of Special Appeals to exercise only intermediate appellate jurisdiction, preclude the Court of Special Appeals from exercising final appellate jurisdiction by issuing a summary denial of an application for leave to appeal without addressing the issues raised, which has been held to bar further appellate review under CJ § 12-202?
>
> 2. Did Petitioner receive ineffective assistance of counsel at trial when counsel failed to object to jury instructions regarding the definition of reasonable doubt?
>
> 3. Did Petitioner receive ineffective assistance of counsel at trial when counsel failed to object to *voir dire* questions that shifted the burden of determining bias to the venirepersons?
>
> 4. Did Petitioner receive ineffective assistance of counsel when counsel failed to file a motion for modification of sentence and a motion for sentence review?

For the reasons more fully stated below, we answer the first question in the negative and hold that CJ § 12-202 is not precluded by Article IV, §14A. Therefore, by finding that this Court does not have jurisdiction to review the Court of Special Appeals' discretionary denial of Mr. Mahai's application for leave to appeal in his postconviction proceeding

10

pursuant to CJ § 12-202, we do not reach the second, third, or fourth questions. We accordingly dismiss this appeal for lack of subject matter jurisdiction.

## STANDARD OF REVIEW

To declare an act of a coordinate branch of government unconstitutional is an exercise of judicial review "of a grave and delicate nature, which never can be warranted but in a clear case." *Anderson v. Baker,* 23 Md. 531, 628 (1865) (emphasis omitted). "We begin with a presumption that the statute is constitutional," and the party challenging the statute has the burden of overcoming this presumption. *Walker v. State*, 432 Md. 587, 626 (2013) (citing *Galloway v. State*, 365 Md. 599, 610–11 (2001)). To overcome this presumption, there "must be a clear and unequivocal breach of the Constitution, not a doubtful and argumentative implication." *Anderson*, 23 Md. at 628.

## DISCUSSION

### A. *Parties' Contentions.*

Mr. Mahai, Petitioner, argues that the Court of Special Appeals is constitutionally precluded under Article IV, § 14A from exercising final appellate jurisdiction by denying an application for leave to appeal without addressing the issues raised. In supporting this argument, Mr. Mahai points to Article IV, § 14A, which states in relevant part, "[t]he General Assembly may prescribe the *intermediate* appellate jurisdiction of these courts of appeal . . . ." Md. Const. art. IV, § 14A (emphasis added). Mr. Mahai maintains that CJ § 12-202, which prohibits the Court of Appeals from reviewing the Court of Special Appeals' denial of an application for leave to appeal in a postconviction proceeding, is

11

unconstitutional because it confers final, not intermediate, appellate jurisdiction on the Court of Special Appeals.

Moreover, Mr. Mahai points out that pursuant to Article IV, § 15 of the Maryland Constitution ("Article IV, § 15"), "the judgment of the Court of Appeals shall be final and conclusive." Md. Const. art. IV, § 15. In light of this constitutional provision, Mr. Mahai argues that CJ § 12-202 is unconstitutional because it "confers final jurisdiction on the Court of Special Appeals" by "prevent[ing] a case from being reviewed by" this Court. Mr. Mahai further argues that "[t]he denial of an application for leave to appeal operates, for all intents and purposes as an affirmance of the lower court's decision." Thus, in reading Article IV, §§ 14A and 15 together, Mr. Mahai contends that by denying an application for leave to appeal, the Court of Special Appeals is exercising final appellate jurisdiction by entering a final and conclusive judgment that is unreviewable by this Court. Accordingly, Mr. Mahai asks this Court to reverse the Court of Special Appeals' denial of his application for leave to appeal.[2]

Conversely, the State of Maryland, Respondent, argues that CJ § 12-202 is constitutional under both Article IV, §§ 14A and 15. Article IV, § 14A allowed the creation

---

[2] Mr. Mahai additionally contends that the Court of Special Appeals' practice to deny applications for leave to appeal with the simple statement indicating the petition for postconviction relief has been read, considered and denied is unconstitutional under Article IV, § 15, which states "an opinion, in writing, shall be filed" in every case heard by either this Court or an "intermediate court of appeal[.]" Md. Const. art. IV, § 15. Because this is not a case on the merits, but instead an application for leave to appeal, the Court of Special Appeals denies the application by order as provided for under the Maryland Rules. Md. Rule 8-204(f) ("On review of the application, any response, the record, and any additional information obtained pursuant to section (e) of this Rule, without the submission

of multiple intermediate courts by the General Assembly as it saw fit, although the General Assembly has only created one intermediate court—the Court of Special Appeals. The State maintains that the use of the word "intermediate" as a qualifier to both "courts" and "appellate jurisdiction" in Article IV, § 14A was merely a clarifying term to distinguish any new appellate courts from the existing Court of Appeals. Additionally, as evidenced by its use of the term "intermediate" to describe both courts and jurisdiction, the State argues the term "intermediate" in "intermediate appellate jurisdiction" does not provide for a substantive limit on the Court of Special Appeals' jurisdiction, but instead merely provides consistency and clarity.

Moreover, the State argues that the clause "the judgment of the Court of Appeals shall be final and conclusive" in Article IV, § 15 sets out a restriction on the General Assembly preventing the establishment of any "other superior court of appellate jurisdiction[.]" *Hammond v. Ridgely's Lessee*, 5 H. & J. 245, 269 (1821). Likewise, the "final and conclusive" reference in Article IV, § 15 indicates that this Court's decisions are the "law of the case" and as such are binding on the courts below. *See Chesapeake & C.B.R. Co. v. Richfield Oil Corp. of N.Y.*, 180 Md. 192, 194 (1942). Thus, the State argues that Article IV, § 15 "spells out the consequence of t[his] Court entering judgment, not

of briefs or the hearing of argument, the Court shall . . . deny the application . . . . The Clerk of the Court of Special Appeals shall send a copy of the order disposing of the application to the clerk of the lower court.").

13

when t[his] Court must, or should be able to, review a case to enter judgment in the first place."

The State further emphasizes that criminal defendants do not possess a constitutional right of appeal, and instead "the right to seek appellate review is statutory; the Legislature can provide for, or preclude, the right of appeal." *Fuller v. State*, 397 Md. 372, 382 (2007) (citations omitted). Here, the State notes that Maryland's Uniform Postconviction Procedure Act denies postconviction petitioners a plenary right of appeal and instead provides that "a person aggrieved by the order . . . may apply to the Court of Special Appeals for leave to appeal the order." Md. Code (2001, 2018 Repl. Vol.), Criminal Procedure ("CP") § 7-109(a).

Additionally, the State notes that the Court of Special Appeals' decision to grant or deny an application for leave to appeal is unreviewable by this Court pursuant to CJ § 12-202. However, the State maintains that this Court has narrowly construed CJ § 12-202 by stating, "although we may not review the Court of Special Appeals' exercise of discretion in granting the State's application for leave to appeal, we are authorized to review that court's decision on the merits remanding the case to the trial court." *Grayson v. State*, 354 Md. 1, 11 (1999) (quoting *Williams v. State*, 292 Md. 201, 210–11 (1981)). The State argues that the Court of Special Appeals' denial of Mr. Mahai's application for leave to appeal was not a merits determination, but instead merely established Mr. Mahai was not allowed an appeal by law.

In sum, the State asserts that Mr. Mahai has failed to carry his burden to extinguish all "reasonable doubt" about the constitutionality of CJ § 12-202, and therefore asks this

14

Court to dismiss this appeal for lack of subject matter jurisdiction or, alternatively, to affirm the order of the Court of Special Appeals denying Mr. Mahai's application for leave to appeal.[3]

**B.      Analysis.**

When reviewing a statute for constitutionality, "[w]e begin with a presumption that the statute is constitutional, and the burden rests on Petitioner to show why that is not the case." *Walker*, 432 Md. at 626. "We are reluctant to find a statute unconstitutional if, 'by any construction, it can be sustained.'" *Galloway*, 365 Md. at 611 (quoting *Beauchamp v. Somerset Cty. Sanitary Comm'n*, 256 Md. 541, 547 (1970)). A "[r]easonable doubt in [a statute's] favor is enough to sustain it." *Beauchamp*, 256 Md. at 547 (quoting *Pitts v. State Bd. of Exam'rs of Psychologists*, 222 Md. 224, 227 (1960)). "The Court will not denounce a statute as void on the ground that the lawmaking power has violated the Constitution, except when such violation is clear and unmistakable." *Kirkwood v. Provident Sav. Bank of Balt.*, 205 Md. 48, 59 (1954).

---

[3]     In his brief to this Court, Mr. Mahai additionally argues that he received ineffective assistance of counsel when his trial counsel failed to object to jury instructions regarding reasonable doubt, failed to object to *voir dire* questions that shifted the burden of determining bias to the venirepersons, and failed to file a motion for modification of sentence and a motion for sentence review.

In turn, the State contends that the Court of Special Appeals soundly exercised its discretion in denying Mr. Mahai's application for leave to appeal. The State argues that Mr. Mahai's appellate counsel did not supply the requisite record to the Court of Special Appeals, Mr. Mahai did not properly allege prejudice, and Mr. Mahai did not properly challenge the postconviction court's finding of fact that his trial counsel was unaware of his desire to file post-trial sentencing motions. We decline to delineate these arguments further because we hold that CJ § 12-202 is constitutional and therefore do not reach these issues.

15

Here, Mr. Mahai challenges the constitutionality of CJ § 12-202, which lists five statutory exceptions to the broad authority of this Court to grant a writ of certiorari "in any case or proceeding pending in or decided by the Court of Special Appeals" codified at CJ § 12-201. Md. Code (1973, 2020 Repl. Vol.), CJ § 12-201. CJ § 12-202 provides:

> A review by way of certiorari may not be granted by the Court of Appeals in a case or proceeding in which the Court of Special Appeals has denied or granted:
> (1) Leave to prosecute an appeal in a post conviction proceeding;
> (2) Leave to appeal from a refusal to issue a writ of habeas corpus sought for the purpose of determining the right to bail or the appropriate amount of bail;
> (3) Leave to appeal in an inmate grievance commission proceeding;
> (4) Leave to appeal from a final judgment entered following a plea of guilty in a circuit court; or
> (5) Leave to appeal from an order of a circuit court revoking probation.

Md. Code (1973, 2020 Repl. Vol.), CJ § 12-202.

This Court has interpreted the limitation to its jurisdiction in CJ § 12-202 to "relate[] only to the action of the Court of Special Appeals in granting or denying an application for leave to appeal." *Williams*, 292 Md. at 210. Addressing whether this Court could review the merits of a case after the Court of Special Appeals had granted leave to appeal in a postconviction proceeding and subsequently reversed the trial court's decision, we stated:

> Under [CJ § 12-202(1)], this Court has no jurisdiction to review a decision of the Court of Special Appeals granting or denying leave to appeal in a post conviction proceeding. However, once the Court of Special Appeals grants leave to appeal in such a case and transfers the case to its appeal docket, the matter takes the posture of a regular appeal, and we do have jurisdiction

16

under [CJ] § 12-201 . . . to review the Court of Special Appeals' decision on the appeal itself.

*Jourdan v. State*, 275 Md. 495, 506 n.4 (1975).

More specifically, as the State correctly asserts, we may review any decision of the Court of Special Appeals that amounts to anything more than a discretionary grant or denial of leave to appeal regardless of whether the case has been transferred to the Court of Special Appeals' regular docket. *See Grayson*, 354 Md. at 12 (holding that this Court had jurisdiction to review the Court of Special Appeals' denial of applications for leave to appeal where the Court of Special Appeals' held two postconviction petitions were not allowable as a matter of law). However, "[i]t is the long and well-established law that t[his] Court has no certiorari jurisdiction to grant post-conviction relief when the Court of Special Appeals has simply denied an application for leave to appeal in a post-conviction proceeding." *Sherman v. State*, 323 Md. 310, 311 (1991) (citing *Williams*, 292 Md. 201).

Here, Mr. Mahai asserts that the "denial of an application for leave to appeal operates, for all intents and purposes, as an affirmance of the lower court's decision." To the extent that this statement may be read as an argument that the Court of Special Appeals' denial of Mr. Mahai's application for leave to appeal was the equivalent of a decision on the merits of his claim, we have directly disposed of this argument in the past by stating, "[w]hen the Court of Special Appeals . . . denie[s] leave to appeal it [does] no more than say, 'There shall be no appeal in this case.' '[N]o decision on the merits' of [the] claim . . . has ever been rendered by any appellate court of this State." *State v. Hernandez*, 344 Md. 721, 728–29 (1997) (emphasis omitted). Therefore, a denial of an application for leave

17

to appeal is wholly distinguishable from an affirmance or reversal of the lower court's decision after considering the merits of the claim. Accordingly, we note that pursuant to CJ § 12-202 we do not have jurisdiction to review the Court of Special Appeals' discretionary denial of Mr. Mahai's application for leave to appeal in his postconviction proceeding.

We now turn to the crux of this case—Mr. Mahai's constitutional challenges to CJ § 12-202. Mr. Mahai argues CJ § 12-202 is unconstitutional under Article IV, §§ 14A and 15 of the Maryland Constitution. Article IV, § 14A states:

> The General Assembly may by law create such *intermediate courts of appeal* as may be necessary. The General Assembly may prescribe the *intermediate appellate jurisdiction* of these courts of appeal, and all other powers necessary for the operation of such courts.

Md. Const. art. IV, § 14A (emphasis added). Article IV, § 15 states:

> Any judge of the Court of Appeals or of an *intermediate court of appeal* who heard the cause below either as a trial judge or as a judge of any *intermediate court of appeal* as the case may be, shall not participate in the decision. In every case an opinion, in writing, shall be filed within three months after the argument, or submission of the cause; and *the judgment of the Court of Appeals shall be final and conclusive*.

Md. Const. art. IV, § 15 (emphasis added).

"When interpreting constitutional provisions, we generally employ the same rules of construction that are applicable to the construction of statutory language." *Fuller v. Republican Cent. Comm. of Carroll Cty.*, 444 Md. 613, 629 (2015) (quoting *Davis v. Slater*, 383 Md. 599, 604 (2004)). We first look to the plain language of the constitutional provision "with a goal of 'discern[ing] the legislative purpose, the ends to be accomplished, or the evils to be remedied by a particular provision . . . .'" *Id.* (quoting *Davis*, 383 Md. at

18

605). "If the meaning remains ambiguous, we consult the history of the enactment or adoption, which we may consult in any event as a check or verification on the apparent plain meaning." *Miles v. State*, 435 Md. 540, 554 (2013) (citing *Robey v. State*, 397 Md. 449, 454 (2007)).

     *a.     Plain language analysis of Article IV, § 14A.*

Beginning with the plain language of Article IV, §14A and the related plain language of Article IV, § 15, Mr. Mahai focuses his argument on the term "intermediate" in both constitutional provisions. He maintains that the term "intermediate court" was "intended to draw a distinction between the authority of the Court of Special Appeals and this Court." Moreover, Mr. Mahai contends that the phrase "intermediate appellate jurisdiction" in Article IV, § 14 "does not, and cannot, include final appellate jurisdiction[.]" Similarly, Mr. Mahai points out that the last sentence in Article IV, § 15, which states "the judgment of the Court of Appeals shall be final and conclusive[,]" demonstrates the ultimate, final authority of this Court while also emphasizing the limited, intermediate authority of the Court of Special Appeals. Thus, Mr. Mahai argues CJ § 12-202 is unconstitutional under the plain language of Article IV, § 14A because—when read together with Article IV, § 15—the constitutional language clearly indicates that the Court of Special Appeals may exercise only intermediate appellate jurisdiction. Mr. Mahai asserts that by denying this Court the authority to review a denial of an application for leave to appeal from a postconviction proceeding, the statute has "interfered with the supremacy of this Court" by "confer[ring] final jurisdiction on the Court of Special Appeals[.]"

To support his interpretation of the plain language of Article IV, § 14A, Mr. Mahai largely relies on an Indiana case in which the Indiana Supreme Court held unconstitutional a jurisdictional statute that made "the Supreme Court virtually inferior to the Appellate Court[.]" *Ex parte France*, 95 N.E. 515, 523 (Ind. 1911). At issue in that case was a statute passed by the Indiana Legislature that divided appellate jurisdiction between the Indiana Supreme Court and the Indiana Appellate Court. *See id.* at 516. The legislation limited jurisdiction of the Indiana Supreme Court to twenty-one classes of appealable cases and granted the Indiana Appellate Court jurisdiction over all other cases, thereby sweeping the "entire residuum of appellate jurisdiction" into the lower court. *Id.* In considering the constitutionality of the jurisdictional statute, the Indiana Supreme Court analyzed Article 7, § 1 of the Indiana Constitution which provided that: "[t]he judicial power of the state shall be vested in a Supreme Court, in circuit courts, and in such other courts as the General Assembly may establish." *Id.* at 517.

The Indiana Supreme Court held that the legislation was unconstitutional because it created a court equal in rank with the Indiana Supreme Court stating:

> That the effect of the act is to make the Appellate Court within the jurisdiction conferred upon it coordinate with the Supreme Court, and to withdraw from the latter court all revising and reviewing power, and therefore make the Appellate Court supreme . . . is manifest. That such power, under our Constitution, cannot be exercised by the Legislature, is well settled . . . . There cannot be a court of co-ordinate jurisdiction with this court, for otherwise it would be supreme.

*Id.* at 521–22 (citations omitted). The court went on to state:

> It is vain to argue that the act in question has due regard for the supremacy of the Supreme Court. That this is not true is apparent from the fact that it confers final jurisdiction upon the Appellate Court in all cases for the

20

recovery of money without any limitations as to the amount and, in effect, excludes the Supreme Court from exercising any jurisdiction whatever in such cases. That this results in respect to such cases in making the Supreme Court virtually inferior to the Appellate Court is self-evident. . . . That which the Legislature is by the Constitution prohibited from doing directly it cannot do indirectly.

*Id.* at 523. Mr. Mahai points to this language and argues that similar to the jurisdictional statute in *Ex parte France*, CJ § 12-202 strips this Court of its jurisdiction by prohibiting it from reviewing the denial of an application for leave to appeal in a postconviction proceeding. Mr. Mahai goes on to argue that the "Maryland [L]egislature cannot interfere with the supremacy of this Court" by "conferring final jurisdiction to the Court of Special Appeals in these types of cases."

However, the State correctly distinguishes this case from *Ex parte France*. In *Ex parte France*, the statute at issue granted the intermediate appellate court broad and exhaustive jurisdiction on the merits of various classes of cases. The *Ex parte France* court "noted that the character of the cases over which the Appellate Court is given final jurisdiction is quite important." *Id.* at 516. Of particular concern, the intermediate appellate court was granted jurisdiction over civil cases with no cap on the amount of damages as well as given the power to construe statutes and interpret contracts. *Id.* Because the decisions of the intermediate appellate court were unreviewable, there was no "revisory power or control" to ensure that the intermediate appellate court adhered to decisions of the Indiana Supreme Court. *Id.* Consequently, the Indiana Supreme Court held that the Indiana Legislature had in fact created a court "equal in rank to the Supreme Court[,]" which deprived the Indiana Supreme Court of its "authority incident to its

21

position as the superior judicial tribunal of the state[,]" thereby rendering the jurisdictional statute unconstitutional. *Id.* at 518–19.

Here, as the State correctly asserts, unlike the statute in *Ex Parte France*, CP § 7-109(b) grants the Court of Special Appeals the power to "affirm, reverse, or modify" the lower court's judgment in a postconviction proceeding only "[i]f the application for leave to appeal is granted[.]"[4] As discussed *supra*, once an application for leave to appeal is granted, this Court has authority to review any decision on the merits—be it an affirmance, reversal, or modification of the lower court's order—pursuant to the broad certiorari

---

[4] CP § 7-109(b) provides in full:

> (b)    (1) The application for leave to appeal shall be in the form set by the Maryland Rules.
> (2) If the Attorney General or a State's Attorney states an intention to file an application for an appeal under this section, the court may:
>> (i) stay the order; and
>> (ii) set bail for the petitioner.
> (3) If the application for leave to appeal is granted:
>> (i) the procedure for the appeal shall meet the requirements of the Maryland Rules; and
>> (ii) the Court of Special Appeals may:
>>> 1. affirm, reverse, or modify the order appealed from; or
>>> 2. remand the case for further proceedings.
> (4) If the application for leave to appeal is denied, the order sought to be reviewed becomes final.

Md. Code (2001, 2018 Repl. Vol.), CP § 7-109(b).

powers granted to this Court in CJ § 12-201.[5]  *See Jourdan*, 275 Md. at 506 n.4.  However, if the application for leave to appeal is denied by the Court of Special Appeals, the order sought to be reviewed becomes final pursuant to CP § 7-109(b)(4).  Put another way, it is as if no appeal were allowed by law.  *See Hernandez*, 344 Md. at 728–29.

Therefore, the broad and exhaustive final jurisdiction granted to the Indiana intermediate appellate court on important and varied classes of cases is dissimilar to the exceedingly narrow scope of unreviewable actions here—that is to say, it is only the Court of Special Appeals' discretionary act of granting or denying leave to appeal that this Court may not review.  As the State argues, "the Court of Special Appeals cannot deploy its [application for leave to appeal] docket to make law, much less declare the law of the case in a manner that competes with this Court's preeminence as the highest court of the State."  We agree and accordingly do not find support in *Ex parte France* for Mr. Mahai's plain language interpretation of CJ § 12-202.

---

[5] CJ § 12-201 provides:

> Except as provided in § 12-202 of this subtitle, in any case or proceeding pending in or decided by the Court of Special Appeals upon appeal from a circuit court or an orphans' court or the Maryland Tax Court, any party, including the State, may file in the Court of Appeals a petition for certiorari to review the case or proceeding.  The petition may be filed either before or after the Court of Special Appeals has rendered a decision, but not later than the time prescribed by the Maryland Rules.  In a case or proceeding described in this section, the Court of Appeals also may issue the writ of certiorari on its own motion.

Md. Code (1973, 2020 Repl. Vol.), CJ § 12-201.

Instead, we find persuasive the plain language analysis offered by the State. The State argues that the word "intermediate" in Article IV, §§ 14A and 15 was used as a clarifying adjective to provide consistency across several constitutional provisions and to distinguish the new appellate courts authorized by Article IV, § 14A from this Court. The State contends that there is no authority to support that the term "intermediate" was "intended to serve as a substantive limit on the intermediate court's appellate jurisdiction[,]" which "has always been defined by legislation separate and apart from" Article IV, § 14.

We agree. The Court of Special Appeals' appellate jurisdiction was initially given by the Maryland Legislature and has since been expanded by statute. "At the time of its nativity, the intermediate appellate court's jurisdiction was limited to criminal matters involving sentences other than death" and was codified at Article 26, § 130 of the Maryland Code in 1973. *Dep't of Human Res. v. Howard*, 397 Md. 353, 360 (2007); *see also* 1973 Md. Laws 1st Sp. Sess., ch. 2. In 1970, the Maryland Legislature "expanded the Court of Special Appeals' jurisdiction to include certain civil matters" and now the Court of Special Appeals has, with few exceptions, "exclusive initial appellate jurisdiction over any reviewable judgment, decree, order or other action of a circuit court, and an orphans' court." *Howard*, 397 Md. at 360–61; *see also* 1970 Md. Laws, ch. 99; Md. Code (1973, 2020 Repl. Vol.), CJ §§ 12-307 and 12-308. It is apparent to us that any substantive limitations to the Court of Special Appeals' jurisdiction would appear in statute, and, by contrast, should not be derived from the term "intermediate" appearing in constitutional provisions.

Additionally, we find this plain language analysis further supported by the fact that "intermediate" is used as a descriptive adjective a total of four times in Article IV, §§ 14A and 15. Out of the four uses, the term "intermediate" is used in connection with "court" or "courts" three times, which has little bearing on a substantive limit of the Court of Special Appeals' jurisdiction. By contrast, the term "intermediate" is only used once in connection with "appellate jurisdiction." Thus, Mr. Mahai's plain language analysis largely rests on the basis of a single, isolated use of the term "intermediate," which we find to be inadequate. Therefore, we agree that the term "intermediate" is merely a clarifying adjective intended to dispel any confusion between this Court and the Court of Special Appeals.

Next, we consider the State's plain language analysis of the final clause in Article IV, § 15 stating, "the judgment of the Court of Appeals shall be final and conclusive." As the State correctly notes, the "final and conclusive" clause has already been construed by this Court according to the text's plain language in a manner that does not support Mr. Mahai's argument. Two centuries ago, this Court held that the words "final and conclusive" are intended to be "declaratory of the quality and legal effect of a decision of the [C]ourt of [A]ppeals[,]" and should be "understood to mean, that the [C]ourt of [A]ppeals so provided for, should be a tribunal of ultimate resort . . . . [T]here should not be created any higher court of appellate jurisdiction[.]" *Hammond*, 5 H. & J. at 268–69 (June Term, 1821). As such, the "final and conclusive" clause "constitutionally guard[s] against the establishment by the [L]egislature, of any other superior court of appellate jurisdiction[.]" *Id.* at 269.

25

Furthermore, we have held that Article IV, § 15 "provides that the judgments of the Court of Appeals shall be final and conclusive. Therefore, the decision of this Court in any cause is binding upon the lower Court and cannot be disregarded." *Chesapeake & C.B.R. Co.*, 180 Md. at 194. Likewise, we have stated in connection with Article IV, § 15, "[t]he effect of a final judgment is to conclude the rights of the parties litigant upon the subject-matter in controversy." *Dorsey's Lessee v. Gary*, 37 Md. 64, 74 (1872).

Thus, we have determined that the "final and conclusive" clause in Article IV, § 15 has been interpreted to serve several purposes. It precludes the Maryland Legislature from creating a court of higher jurisdiction than this Court, and it ensures that the decisions of the Court of Appeals are binding on the parties and the courts below. By speaking to the quality and effect of the Court of Appeals' decisions, the clause indicates the consequence of this Court entering judgment without providing guidance on when this Court should enter judgment. Therefore, we do not agree with Mr. Mahai's contention that the plain language of Article IV, § 15 grants this Court the authority to review every discretionary action of a lower court, but instead provides that when we do issue a judgment, that judgment carries ultimate authority.

b.      *History of the Adoption of Article IV, § 14A.*

To verify our plain language analysis, we now consult the history of the adoption of Article IV, § 14A. *See Miles*, 435 Md. at 554. In response to this Court's increasingly large criminal docket, proponents of the constitutional amendment advocated for an intermediate appellate court. *See Walston v. Sun Cab Co., Inc.*, 267 Md. 559, 564–65 (1973). As we have explained in the past:

26

> The immediate purpose of [Article IV, § 14A] was to enable the General Assembly to relieve this Court of the substantial increase of criminal appeals which had inundated the Court and yet provide at least one appeal as of right, either to this Court or to an intermediate court to be created by statute. There was also an underlying general purpose to provide sufficient flexibility in the grant of power by the constitutional amendment to provide for a grant of appellate power to the intermediate appellate court or courts to be created over certain—or perhaps ultimately all—civil cases.

*Id.*

On March 23, 1966, the General Assembly passed three bills relevant to this case: Senate Bill 73, Senate Bill 10, and Senate Bill 74. 1966 Md. Laws, ch. 10, 11, and 12. Senate Bill 73 was a constitutional amendment that created Article IV, § 14A. It "was a general grant of power to the General Assembly to create by law 'such intermediate courts of appeal, as may be necessary' and to 'prescribe the intermediate appellate jurisdiction of these courts of appeal, and all other powers necessary for the operation of such courts.'" *Walston*, 267 Md. at 564; 1966 Md. Laws, ch. 10.

Senate Bill 10 was enabling legislation that created the intermediate appellate court upon ratification of the constitutional amendment. Of particular import, the bill granted the intermediate appellate court jurisdiction for criminal cases not involving the death penalty, "subject in each case to a further appeal to the Court of Appeals as provided by *Section 21A of Article 5 of this Code . . . .*" 1966 Md. Laws, ch. 11 (emphasis added).

Senate Bill 74, in pertinent part, created Article 5, § 21A of the 1957 Maryland Code, which expressly precluded appeals to this Court on the basis of an intermediate court's grant or denial of leave to appeal in postconviction proceedings. 1966 Md. Laws, ch. 12. Article 5, § 21A provided:

> In any criminal case, post conviction or defective delinquent proceeding in which a decision has been rendered by the Court of Special Appeals upon appeal from the circuit court of any county, the Criminal Court of Baltimore, or one of the law courts of Baltimore City if it shall be made to appear to the Court of Appeals upon petition of any party, whether a defendant or the State, that a review is desirable and in the public interest, the Court of Appeals shall require, by certiorari or otherwise, any such case to be certified to the Court of Appeals for its review and determination, *except no such petition shall be entertained by the Court of Appeals from the denying or granting by the Court of Special Appeals of an application for leave to prosecute an appeal in post conviction* and defective delinquent proceedings and from the denying or granting by the Court of Special Appeals of a petition for review filed under Section 21 of this article.

1966 Md. Laws, ch. 12 (emphasis added). This language is now codified at CJ § 12-202.

The contemporaneous passage of these three bills demonstrates that from the inception of the intermediate appellate court, the General Assembly intended to prohibit this Court from reviewing the grant or denial of an application for leave to appeal in a postconviction proceeding.

Several months later on November 8, 1966, Article IV, § 14A was ratified by the electorate and "[p]ursuant to that constitutional amendment, the General Assembly created, by statute, the Court of Special Appeals as the second ever intermediate appellate court in Maryland."[6] *Howard*, 397 Md. at 360.

---

[6] During the Revolutionary War period, the State of Maryland provided in its Constitution for an intermediate appellate court called the General Court. Md. Const. of 1776, art. 56. The court was organized into two branches: the General Court of the Western Shore, which sat in Annapolis and the General Court of the Eastern Shore, which sat in Easton. *See Howard*, 397 Md. at 360 n.8. In 1806, the General Court was abolished, "leaving the Court of Appeals as the State's only appellate court until the Court of Special Appeals" was established in 1966. *Id.*; *see also* 1804 Md. laws, ch. 55.

28

Mr. Mahai correctly points out that "[t]he constitutional amendment and implementing legislation was largely conceived and originally promoted by the Maryland State Bar Association." *Walston*, 267 Md. at 566. In *Walston*, we stated:

> [T]he State Bar Committee reconsidered the whole subject and on June 24, 1965, recommended the creation of the Court of Special Appeals limited originally to appellate jurisdiction in criminal (other than death cases), post-conviction and defective delinquency cases. The Committee's basic premise was that 'a litigant is entitled to at least one appeal as a matter of right in each case and where this appeal was to the Court of Special Appeals, a petition for a writ of certiorari could be filed to the Court of Appeals by the litigant adversely affected whether it be the accused or the State.' . . . This Report was unanimously adopted by the Maryland State Bar Association, 70 Maryland State Bar Association at 134 (1965).

*Id.* (emphasis omitted). Mr. Mahai relies on this language as an assertion that the framers of the constitutional amendment intended to provide each adversely affected litigant with the opportunity to petition this Court for a writ of certiorari.

While we agree that the Report of the Seventieth Annual Maryland State Bar Association is useful in discerning the intent of the Maryland Legislature in framing Article IV, § 14A, we do not reach the same conclusion as Mr. Mahai. Instead, after reviewing this report, we determine that the Maryland State Bar Association intended for the Court of Special Appeals to have final discretion on the denial of an application for leave to appeal in a postconviction proceeding. The report states:

> The recommendation as you all know is for the creation of a Court of Special Appeals. The jurisdiction of this Court would be, first, all criminal cases where no death penalty was imposed; secondly, applications under the Uniform Post-Conviction Procedure Act in cases where no death penalty was

29

imposed. . . . That, in broad outline, is the suggested initial jurisdictional limits for this Court.

\*\*\*

The next thing that should be brought to your attention is how the Court of Appeals will fit into this general scheme. First there are two areas in which appeals will be taken directly to the Court of Appeals, and will not go, as the Committee envisions it, to the Special Court. . . . Conversely, *no petition for writ of certiorari will be allowed to the Court of Appeals in the following two types of cases*: first, those in which the Court of Special Appeals has denied a petition for writ of certiorari where the appeal came from a court of limited jurisdiction; and secondly, *those in which the Court has denied an application for leave to appeal in post-conviction* and defective delinquent matters. So much then for the jurisdiction.

Maryland State Bar Ass'n, *Proceedings of the Seventieth Annual Meeting of the Maryland State Bar Association, Inc.*, at 109–11 (1965) (emphasis added).

It is apparent to us that the Maryland State Bar Association fully contemplated that the Court of Special Appeals would have the final authority to deny an application for leave to appeal in a postconviction proceeding. This—taken together with the fact that the General Assembly passed enabling legislation expressly precluding appeals to this Court on the basis of an intermediate court's denial of applications for leave to appeal in postconviction proceedings on the same day as it passed the referendum language— provides ample evidence that our earlier plain language analysis is correct. The term "intermediate" in Article IV, § 14A is a clarifying adjective, not a substantive limitation on the Court of Special Appeals' jurisdiction.

Therefore, in light of both the plain language and history of the adoption of Article IV, § 14A, we conclude that Mr. Mahai has failed to overcome the presumption of constitutionality that attaches to CJ § 12-202, and as such we hold that CJ § 12-202 is constitutional.

30

**CONCLUSION**

In summary, for the foregoing reasons, we hold that CJ § 12-202 is not precluded by Article IV, §14A of the Maryland Constitution.  Thus, pursuant to CJ § 12-202, this Court lacks subject matter jurisdiction to review the Court of Special Appeals' discretionary denial of an application for leave to appeal in a postconviction proceeding. We accordingly dismiss this appeal.

**APPEAL DISMISSED.  COSTS TO BE PAID BY PETITIONER.**

31